# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

DIANA LYNN ANGLADA

    Plaintiff

v.

MARC ANDRE CHIFFERT

    Defendant

_____/

CASE NO.

PLAINTIFF DEMANDS TRIAL BY JURY

## COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiff, DIANA LYNN ANGLADA, through her undersigned counsel, respectfully states and prays as follows:

### JURISDICTION AND VENUE

1. All the events or omissions giving rise to the claims set forth in this action occurred within the District of Puerto Rico in the Commonwealth of Puerto Rico.

2. Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

### PARTIES

4. Plaintiff DIANA LYNN ANGLADA (hereinafter "Plaintiff") is a citizen and resident of the Commonwealth of Puerto Rico.

5. Defendant MARC ANDRE CHIFFERT (hereinafter "Defendant") is a citizen and resident of the State of New York.

1

## FACTS OF THE CASE

6. Plaintiff met Defendant at an event held in San Juan, Puerto Rico on November 4, 2023, where Defendant targeted Plaintiff, began pursuing her, and the two started a romantic relationship on November 26, 2023.

7. Defendant immediately began to entice Plaintiff under false pretenses by being deceitful about him being unmarried, sending flowers, giving her keys to his apartment at Miramar Plaza in San Juan, flying her to New York to celebrate her birthday, and ultimately asking her to move into the Miramar Plaza apartment, which she did, on December 9, 2023. All of this occurred within the first two weeks of their relationship.

8. By January 2024, Defendant had professed being in love with Plaintiff, convinced her to completely move into the Miramar Plaza apartment, cancel her former plans of moving to Florida with her daughter, and open a joint bank account with him in Puerto Rico at Banesco USA bank. Plaintiff deposited most, if not all of the funds, in that account.

9. Defendant, in order to persuade Plaintiff to establish a home with him prior to a formal domestic relationship, gifted her through a simulated deed, a 50% interest in his home, a condo in San Juan on February 9th, 2024 before a notary public.

10. The prior transaction by Defendant, was set forth in consideration for her consent to live at that property with Defendant, and was done pursuant to her feelings that she wanted to feel that this was also her home.

11. Said deed stipulated a supposed payment by Plaintiff for her half share of the property, as if she were actually paying for said donation. Nothing could be

2

further from the truth, and no effective payment was ever set forth by Plaintiff, as subsequent documents and actions have shown.

12. Plaintiff understands that this sham, ineffective payment obligation was prepared in order for Defendant to defraud the Puerto Rico Treasury Department by not filing a return reporting the appropriate gift tax for this property.

13. Plaintiff now understands that she was further defrauded with other discrepancies in the deed, such as Defendant alleging that he was single when in fact, he is in a long time 37 year existing marriage and had been all along.

14. Plaintiff demands that the deed gifting her a 50% interest in the condo be corrected by the defendant and that he file the proper gift tax return with the Puerto Rico Treasury department in order to fully legalize the purpose and intent of the transaction.

15. By February 2024, Defendant would routinely publicly refer to Plaintiff as his "wife" and told acquaintances that they owned a home in Miramar Plaza together. He convinced her under false pretenses and fraud to enter into a certain Deed of Purchase and Sale whereby she agreed to "acquire" fifty percent (50%) of the Miramar Plaza apartment, and he convinced her under false pretenses and fraud to open a joint bank account with Banesco USA which he referred to as their "retirement fund", but which only she deposited **her** funds in.

16. BY this point, Plaintiff had changed her mailing address and all her accounts to the Miramar Plaza apartment.

17. Throughout the month of March 2024, Plaintiff made various deposits of her personal earnings into the joint bank account with Banesco USA totaling approximately $66,750.

18. By the end of March 2024, Plaintiff had become suspicious of Defendant's representations and intentions; and decided to discontinue depositing her personal earnings into the joint bank account at Banesco USA.

19. By this time Plaintiff had become aware that Defendant had various other women who he often communicated with and with whom he had romantic relationships. Plaintiff confronted Defendant about this, and they often argued about this issue.

20. On June 20, 2024, Plaintiff once again confronted Defendant about these other relationships he was having with other women, including a woman he referred to as his "ex-wife" of 37 years, whereupon he proceeded to angrily throw his cellphone at Plaintiff's face, striking her in the cheek and bruising her face. Defendant told her that he would "destroy" her if she did anything and that she "would not see the light of day" when he was through with her.

21. By July 2024, Plaintiff was able to confirm that Defendant was indeed a married man who lived in Southampton, New York with his wife of 37 years.

22. In early August 2024, Defendant attempted to reconcile, saying he considered her his wife and that he wanted to invest the money Plaintiff had deposited in the joint bank account. When Plaintiff once again confronted Defendant with his other on-going romantic relationships, he became enraged, aggressively seizing her by the shoulders and shaking her violently, saying again that he would "destroy" her

4

if she made things difficult for him, and again threatening her that she "would not see the light of day."

23. On August 8, 2024, Plaintiff confronted Defendant with evidence of his romantic communications with other women, whereupon he again became enraged, grabbing her phone, and upon not being able to access it, threw it at her violently, but missed. Plaintiff asked Defendant to leave the home but he refused.

24. On August 13, 2024, Plaintiff filed charges with the Puerto Rico Police Department against Defendant under Puerto Rico's Public Law No. 54, which makes domestic violence a crime. The Police Department subsequently determined that there was probable cause, issued a protective stay away order, and on the next day removed Defendant from the Miramar Plaza apartment, which they now owned jointly.

25. Since his removal, Defendant has continued to intimidate Plaintiff by repeatedly showing up at the Miramar Plaza apartment without her consent, having the locks changed illegally on two occasions without her consent, sending her unwanted messages, stalking her, parking his car close by, and repeatedly contacting her acquaintances and clients.

26. Plaintiff has suffered and continues to suffer great emotional distress, anxiety, pain and suffering, along with her physical damage and damage to her reputation, as a direct result of Defendant's tortious acts. She suffered physical damages because of Defendant's aggressions. She currently lives in constant fear that Defendant will be able to follow through on his multiple threats. She has been deeply affected emotionally because of Defendant's actions. She will also necessarily incur medical expenses in

the future in order to treat her emotional condition. Plaintiff's physical and emotional damages in this case are reasonably valued at a sum in excess of $1,000,000.00.

25. Plaintiff has also suffered economic damages due to Defendant's actions in this case which are reasonably valued at a sum in excess of $300,000.00.

26. In addition, under Article 1538 of the Civil Code of Puerto Rico Plaintiff is entitled to punitive damages due to the fact that defendant's acts herein described were fraudulent or deceitful ("dolosos") and/or done with grave disregard to the life, security and property of Plaintiff. These damages are valued at a sum equal to the other damages claimed herein.

## DEMAND FOR TRIAL BY JURY

27. Plaintiff requests and respectfully demands a trial by jury of all issues in this case triable of right by a jury.

28. In the event that the Defendant denies his negligence and liability for the events or omissions giving rise to the claims set forth in this action as well as Plaintiff's resulting injuries and damages, Plaintiff hereby requests the imposition of pre-judgment and post-judgment interest and attorney's fees in this case.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, in the fair and reasonable sum of ONE MILLION THREE HUNDRED THOUSAND DOLLARS ($1,300,000.00), together with interest, costs, and reasonable attorney fees, as well as punitive damages, and for such other and further relief as may be appropriate under the circumstances, and that the sham promissory note identified in paragraph 11 be cancelled and returned to Plaintiff, and that the $66,750 in the Banesco account belonging to her be released to her.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico on this 17th of September 2024.

*s/David Efron*
**DAVID EFRON**
USDC-PR125701
**LAW OFFICES DAVID EFRON, PC**
*Attorneys for Plaintiff*
PO Box 29314
San Juan, PR 00929-0314
Tel. 787-753-6455
Fax 787-758-5515
efron@davidefronlaw.com
